UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:22-CV-00024-BJB-LLK

MARQUETTE TRANSPORTATION COMPANY, LLC          PLAINTIFF

V.

EMERALD INTERNATIONAL CORPORATION              DEFENDANT

---

MARQUETTE TRANSPORTATION COMPANY, LLC'S
MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
(Electronically Filed)

---

Plaintiff, Marquette Transportation Company, LLC ("Marquette"), for its Memorandum in Support of its Motion for Summary Judgment, states as follows:

SUMMARY OF ARGUMENT

This is a straightforward case of failure to pay amounts owed under the undisputed terms of a transportation contract. Marquette and Emerald International Corporation ("Emerald") entered into a Barge Transportation Agreement (the "Agreement") in August 2021, pursuant to which Marquette was to transport 100,000 short tons of coal by barge for Emerald from Mt. Vernon, Indiana and/or Uniontown, Kentucky to Convent, Louisiana in two shipments.[1] The Agreement provided no specific delivery dates for the shipments, with the first shipment identified as a September shipment and the second shipment identified as an October shipment.

---

[1] See Barge Transportation Agreement, attached as Exhibit "A-1".

The Agreement provided that Marquette "will not be bound to transport any cargo . . . in time for any particular market, and will not be liable for deviations or delays in shipment."[2] The Agreement also provided that payment for Marquette's services was considered "earned and due and payable at the commencement of the voyage."[3] Further, Emerald was required to "pay freight and demurrage in full notwithstanding any loss or damage to cargo, or interruption or abandonment of the voyage."[4] Finally, all payments required under the Agreement must be made in full within 30 days of the invoice date.[5]

Just days after the Agreement was entered, Hurricane Ida struck the Louisiana coast, resulting in significant delays in loading and unloading ocean going vessels in the New Orleans area, where the coal that is the subject of the Agreement was to be loaded for transport overseas. The delays produced a bottleneck of barges waiting to be loaded or unloaded, which limited the supply of available barges. These issues were evidenced by the delay in the loading of the first shipment of coal in Convent, Louisiana, the loading of which was delayed by at least 10 days. The second shipment was also delayed by the continued difficulty in securing barges. As a result of the ongoing delays and pursuant to the term of the Agreement, Marquette declared a force majeure event on October 19, 2021. Ultimately, the second shipment was completed, and the last barges were loaded on a ship in Convent on November 7, 2021.

---

[2] Exhibit "A-1", p. 3, Article 1.

[3] Exhibit "A-1", p. 4, Article 5.

[4] Exhibit "A-1", p. 4, Article 5.

[5] Exhibit "A-1", p. 4, Article 6.

Marquette invoiced Emerald for the transportation services it provided and demurrage[6] that it was owed pursuant to the terms of the Agreement; however, Emerald has failed to pay several of the invoices, totaling $381,896.32, despite admitting that amounts invoiced are owed under the terms of the Agreement. Accordingly, Marquette is entitled to summary judgment on its claim to recover the amount of these outstanding invoices, plus attorney's fees incurred in seeking collection of the amounts owed, as provided in the Agreement.

Emerald alleges that it paid demurrage to its customer in the amount of $357,423.04 because of the delayed arrival of the barges in Convent for the second shipment and asserts a right to a setoff from Marquette's recovery for the amounts it paid. The Agreement plainly prohibits the relief that Emerald seeks, stating Marquette shall not be liable for any consequential damages, "including damages resulting from or related to deviations or delays in shipment." As a result, Emerald is not entitled to such demurrage based on the clear and unambiguous terms of the Agreement, and Marquette is also entitled summary judgment on Emerald's claim for setoff for demurrage.

## FACTUAL BACKGROUND

A.   The Barge Transportation Agreement

The Barge Transportation Agreement provides no deadline for the delivery of the coal that is the subject of the Agreement. Instead, the only references to delivery timing in the Agreement are as follow:

**Term:** September – October 2021

\* \* \*

---

[6] Demurrage is a reparation paid to the ship owner to compensate for vessel time lost. Thomas J. Schoenbaum, Admiralty & Maritime Law § 11-15 (5th ed. 2015).

3

**Volume:** 100,000 short tons (50,000 – September; 50,000 – October)[7]

Consistent with there being no specific delivery deadline, the Agreement clearly states that Marquette shall have no responsibility for any delays in the delivery of the coal. Specifically, the Agreement provides in relevant part as follows:

> **1. Transport.** Carrier will not be bound to transport any cargo by any particular barge or towboat or route or in time for any particular market, and will not be liable for deviations or delays in shipment.
>
> * * *
>
> **8. Movement of Cargo.** All decisions concerning the transportation of cargo under this contract will be at the sole discretion of Carrier and will not subject Carrier to liability of any kind.
>
> * * *
>
> **14. No Consequential or Punitive Damages.** Carrier will not be liable under any theory of fault for any punitive, indirect or consequential damages or losses (including loss of production or loses from business interruption). Without limiting the generality of the foregoing, Carrier will not be liable for any losses or damages resulting from or related to deviations or delay in shipment . . .[8]

The payment provisions in the Agreement are equally straightforward. They provide in relevant part:

> **5. Freight Rate.** Freight for the shipment will be considered earned and due and payable at the commencement of the voyage. Shipper will pay freight and demurrage in full notwithstanding any loss or damage to cargo, or any interruption or abandonment of the voyage.
>
> **6. Payment Terms.** Shipper and Carrier agree that unless other term are specified in Part 1, all payments required under this contract will be made in full within thirty (30) days from the invoice date. Shipper will pay Carrier's costs including attorney's fees incurred in seeking collection of any unpaid freight, demurrage and/or related charges.[9]

---

[7] Exhibit "A-1", p. 1.

[8] Exhibit "A-1", pgs. 3, 4, and 6. Marquette is the "Carrier" under the terms of the Agreement and Emerald is the "Shipper."

[9] Exhibit "A-1", p. 4.

Nothing in Part 1 alters the payment terms noted in Article 6 of the Agreement; instead, Part 1 reinforces that payment is due "[n]et 30 days from invoice date."[10]

### B. The Transport of the Subject Coal

The Agreement contemplated that Marquette would transport 100,000 tons of coal for Emerald in two shipments, in September and October 2021, although the Agreement provides no specific delivery deadlines. The parties had discussions about the timeframe for each shipment to arrive in Convent, Louisiana; however, shortly after the Agreement was entered, Hurricane Ida made landfall on the Louisiana coast, which resulted in significant delays in ships being loaded in the New Orleans area, including a delay of approximately 10 to 12 days in loading of the September shipment of coal.[11]

These delays resulted in barges waiting longer periods of time to be unloaded, effectively cutting off Marquette's supply of available empty barges and impacting its ability to provide barges for the October shipment, resulting in Marquette issuing a force majeure letter to Emerald as well as other customers on October 19, 2021.[12] Despite the challenges created by Hurricane Ida, Marquette completed delivery of the second shipment of coal to Convent, Louisiana, with the final barges arriving on November 7, 2021.[13]

---

[10] Exhibit "A-1", p. 2.

[11] See October 19, 2021 force majeure letter issued by Marquette, attached as Exhibit "A-2" and Deposition of Rick Martin, at pp. 36-37, attached as Exhibit "B".

[12] Exhibit "B", at pp. 36-37, 57-58.

[13] See Declaration of Rick Martin, attached as Exhibit "A".

C. <u>The Undisputed Invoices that Remain Outstanding</u>

Although Emerald has paid some of the invoices for the services provided by Marquette pursuant to the subject Agreement, the following Marquette invoices remain outstanding:

| <u>Invoice No.</u> | <u>Invoice Date</u> | <u>Amount</u> |
|---|---|---|
| FR21-215240 | 10/29/21 | $311,096.32 (transportation services for the second shipment) |
| DD21-213777 | 10/20/21 | $68,400 (demurrage for the first shipment) |
| DD21-215395 | 11/3/21 | $600 (demurrage for the second shipment) |
| DD21-216039 | 11/8/21 | $1,200 (demurrage for the second shipment) |
| DD21-216932 | 11/10/21 | $600 (demurrage for the second shipment)[14] |

These invoices total $381,896.32. Each invoice is dated well more than 30 days ago, but all of the invoices remain outstanding.[15]

LAW AND ARGUMENT

A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When one party moves for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence

---

[14] See invoices, attached hereto *in globo* as <u>Exhibit "A-3"</u>.

[15] <u>Exhibit "A"</u>.

of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; rather, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510.

      B.    <u>Payment of Marquette's outstanding invoices is owed under the clear and unambiguous terms of the Agreement</u>

The Agreement is "governed by and construed in accordance with the general maritime laws of the United States."[16] Maritime contracts "must be construed like any other contracts: by their terms and consistent with the intent of the parties." *Norfolk Southern R. Co. v. James N. Kirby, Pty Ltd.*, 543 U.S. 14, 31, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004); see also 2 T. Schoenbaum, *Admiralty & Maritime Law* § 11:2, p. 7 (6th ed. 2018) ("[F]ederal maritime law includes general principles of contract law"). "Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435, 135 S.Ct. 926, 190 L.Ed.2d 809 (2015) (quoting 11 R. Lord, *Williston on Contracts* § 30:6, p. 108 (4th ed. 2012) (Williston)). In such circumstances, the parties' intent "can be determined from the face of the agreement" and "the language that they used to memorialize [that] agreement." 11 Williston § 30:6, at 97–98, 112–113.

Five Marquette invoices have been outstanding for more than 18 months, one encompassing the barge transportation for the second shipment, one covering demurrage owned by Emerald for the first shipment, and three covering demurrage for the second shipment. There is no question that each of these invoices is owed and past due under the terms of the Agreement. Emerald has admitted outstanding invoices are owed under

---

[16] <u>Exhibit "A-1"</u>, p. 6.

the terms of the Agreement.[17] Because these invoices are past due under the clear payment terms of the Agreement, Marquette is entitled to summary judgment on its claim for the total amount of the invoices, $381,896.32.

In addition, the Agreement provides that Emerald shall pay Marquette's attorney's fees for its efforts to collect on amounts owed, including freight and demurrage.[18] As a result, Marquette is also entitled to recover its attorney's fees for its efforts to collect the past due amounts from Emerald based on the clear and unambiguous terms of the Agreement.

    C.    <u>The Agreement and relevant law both prohibit setoff for Emerald's demurrage</u>

Emerald alleges it paid demurrage to its customer in the amount of $357,423.04 because of the delay in Marquette's barges arrival in Convent with the second shipment of coal and asserts a right to a set off for the amounts it paid.[19] The plain terms of the Agreement are that Marquette has no liability for any delays in the shipment of the coal. In addition, the Agreement unquestionably prohibits the recovery of consequential damages, including damages resulting from delay in shipment, precisely the type of expenses for which Emerald seeks a set off. On the basis of these clear and unambiguous terms in the Agreement, Emerald's claim of setoff should be dismissed as a matter of law.

Emerald apparently takes the position that Marquette "intentionally" and "willfully" breached the Agreement, entitling it to a setoff, despite the prohibition on damages

---

[17] See Deposition of Jack Wells, at pp. 64-66, attached as <u>Exhibit "C"</u>.

[18] <u>Exhibit "A-1"</u>, p. 4, Article 6.

[19] DN 8, ¶ 31.

8

resulting from delay in the Agreement.[20] This is contrary both to the terms of the Agreement and the relevant law. As detailed above, multiple sections in the Agreement, including Section 1, 8, and 11, make clear that Marquette has no liability for any damages resulting from delay in shipment, regardless of whether such damages are direct or indirect.

In addition, the relevant law prohibits the relief that Emerald seeks. The Agreement is governed by general maritime law, supplemented by state law as necessary, namely, "the statutes, rules and case law of the Eastern District of Louisiana."[21]  The United States District Court for the Eastern District of Louisiana has directly addressed a similar setoff argument in *Lytal Enterprises, Inc. v. Newfield Exploration Co.*, Civil Action No. 06-0033, 2006 WL 2990124 (E.D. La. Oct. 18, 2006). In *Lytal*, at issue were outstanding invoices owed by a vessel charterer pursuant to the terms of a charter agreement. Similar to the argument made by Emerald here, the charterer argued that the invoices either were not owed because the vessel owner breached the charter agreement by failing to provide replacement vessels for certain vessels that were out of service, or the charterer was entitled to a setoff as a defense to payment. *Id*. at *4. The *Lytal* court disagreed, finding the charter hire was owed pursuant to the terms of the agreement, and there was no right to setoff, holding "[i]n the absence of statutory, contractual or case law authority establishing a set-off defense in this context, the Court holds that Newfield's claims are not a defense to its divisible obligation to pay the invoices at issue." *Id*. at *6.

Louisiana law is consistent with the holding in *Lytal. See, e.g., Lifecare Hospitals of New Orleans, L.L.C. v. Lifemark Hospitals of Louisiana, Inc.*, 984 So.2d 894, 899 (La.

---

[20] See Emerald's Answers to Interrogatories, Answers to Nos. 3 and 4, attached as Exhibit "D".

[21] Exhibit "A-1", p. 6, Article 16.

App. 5 Cir. 2008) (holding that any intentional breach of lease by landlord did not render the lease invalid, as would support property insurer's claim that waiver of subrogation provision in the lease was inoperative); *Burleigh v. Lee*, 2017-0335, 2018 WL 1279830 (La. App. 1 Cir. 3/12/18) (recognizing that "the fact that a contract may have been breached does not render inoperative remaining contractual provisions").

Just as in these cases, Emerald's argument that Marquette somehow intentionally breached the Agreement (of which there is no proof), and that this alleged breach renders inoperable the multiple provisions in the Agreement that unequivocally state Marquette is not liable for any damages for delay, simply is not supported by applicable law.

Accordingly, Emerald is not entitled to a setoff either under the unambiguous terms of the Agreement or the relevant law, and Marquette is entitled to summary judgment on the full amount of the outstanding invoices, $381,896.32, in addition to its attorney's fees for its efforts to collect the amounts it is clearly owed under the undisputed terms of the Agreement, with the amount of said attorney's fees to be determined by subsequent motion filed with the Court.

RESPECTFULLY SUBMITTED, this the 30th day of June, 2023.

MILLER HAHN, PLLC

By: */s/ Bobby R. Miller, Jr.*
Bobby R. Miller, Jr., Esq.
2660 West Park Drive, Suite 2
Paducah, KY 42001
Telephone: (270) 554-0051
Facsimile: (866) 578-2230
Email: bmiller@millerlaw-firm.com

and

        Allan C. Crane, Esq.
        Miller Hahn, PLLC
        365 Canal Street, Suite 860
        New Orleans, LA 70130
        Telephone: (504) 684-5044
        Facsimile: (866) 578-2230
        Email: acrane@millerlaw-firm.com

        Attorneys for Marquette Transportation Company, LLC

## CERTIFICATE OF SERVICE

I hereby certify that I have this the 30th day of June, 2023, electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Jefferson R. Tillery, Esq.
Jones Walker LLP
201 St. Charles Avenue, Suite 4800
New Orleans, LA 70170
Telephone: (504) 582-8000
Facsimile: (504) 582-8164
Email: jtillery@joneswalker.com

Victor A. Walton, Jr., Esq.
J.B. Lind, Esq.
Vorys Sater Seymour and Pease LLP
301 East 4th Street, Suite 3500
Cincinnati, OH 45202
Telephone: (513) 723-4027
Facsimile: (513) 852-8447
Email: vawalton@vorys.com
Email: jblind@vorys.com

Justin J. Marocco, Esq.
Jones Walker LLP
445 North Blvd., Suite 800
Baton Rouge, LA 70802
Telephone: (225) 248-2415
Facsimile: (225) 248-3115
Email: jmarocco@joneswalker.com

*Attorneys for Defendant, Emerald International Company*

        */s/ Bobby R. Miller, Jr.*
        Attorney for Marquette Transportation Company, LLC