UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:22-CV-24-BJB

MARQUETTE TRANSPORTATION COMPANY,                    PLAINTIFF

V.

EMERALD INTERNATIONAL CORPORATION                    DEFENDANT

**EMERALD INTERNATIONAL CORPORATION'S MEMORANDUM IN OPPOSITION TO MARQUETTE'S MOTION FOR SUMMARY JUDGMENT**

In this memorandum, Defendant, Emerald International Corporation ("Emerald"), delineates the multitude of shortcomings in Marquette Transportation Company's ("Marquette") motion for summary judgment, and thus, why the Court should deny the motion. This reasoning includes the plethora of critical facts omitted from Marquette's motion, including the background and the invalidity of Marquette's after-the-fact *force majeure* declaration. Moreover, Marquette's argument that Emerald's setoff claim is improper fails as a matter of law, and the inapplicable cases cited by Marquette do nothing to overcome those legal flaws. Finally, Marquette's motion fails because, at the least, there are genuine issues of material fact whether Marquette is entitled to recover for the invoices attached to its motion. Therefore, for these and the reasons expounded upon below, the Court should deny Marquette's motion for summary judgment.

## SUMMARY OF THE ARGUMENT

The crux of the present dispute is that Marquette failed to perform pursuant to its Barge Transportation Agreement with Emerald, when Marquette withdrew the agreed number of barges necessary for the timely and complete performance of its agreement with Emerald in order for those barges to be used for another customer of Marquette. Marquette agreed to send a certain number of barges, Marquette knew the number of barges were needed to perform the contract, and

Marquette understood that the number of barges was a primary consideration for the deal. Ultimately, with this knowledge, and within days of the withdrawal of the agreed-upon barges, Marquette issued a *force majeure* letter in an attempt to excuse its lack of performance, purportedly due to the effect of Hurricane Ida—a storm that made landfall over a month-and-a-half prior to Marquette's issuance of the *force majeure* letter.

Marquette cannot obtain a summary judgment because of Emerald's proper and pending defense of setoff. While Marquette avers that the claim is improper because Emerald purportedly waived recovery of consequential damages, that waiver only applies to claims under "any theory of fault." And the breach of contract claim that gives rise to setoff is not a "theory of fault" as per the United States Supreme Court.[1] Moreover, summary judgment is improper because, under the concept of compensation (i.e., setoff) in Louisiana law—which is applicable to the pending case—Marquette's claim is extinguished to the extent compensation/setoff exists. Thus, Marquette cannot receive a summary judgment at this stage in light of the proper and pending claim for compensation/setoff by Emerald.

Furthermore, through this lawsuit, Marquette seeks payment for invoices for demurrage that only arose due to Marquette's untimely performance and for which it cannot recover. Furthermore, Marquette seeks payment for an invoice related to demurrage arising from the same *force majeure* event for which Marquette seeks to excuse its own performance. Under the *force majeure* clause of the Barge Transportation Agreement, if Hurricane Ida was a *force majeure* event, then neither Marquette nor Emerald could recover for "any loss or damage or from failure to perform caused or contributed to by the" event. Thus, Marquette cannot recover for these invoices.

---

[1] *See CITGO Asphalt Ref. Co. v. Frescati Shipping Co.*, 140 S. Ct. 1081, 1089 (2020) (citations omitted).

# LAW AND ARGUMENT

I. **Marquette failed to perform under the parties' Barge Transportation Agreement by pulling barges that were scheduled for Emerald, in order for Marquette to use those same barges to service another customer.**

Marquette's motion for summary judgment omits several key facts that bear on the pending motion. Emerald outlines the full history of the matter before this Court, including these pertinent facts, in the paragraphs below.

Emerald's core business is the international trade of coal products.[2] As part of its business, Emerald obtains supplies from various producers and transports the coal through the lower Mississippi River to the Gulf of Mexico via barges.[3] In September and October 2021, Emerald intended to load coal onto barges at the Alliance Resource Partners, LP ("Alliance") facility in Mount Vernon, Indiana, and then have that coal transported along the inland waterways to the Associated Terminals facility in Convent, Louisiana.[4] Emerald would then arrange for the coal to be loaded onto the M/V SHAO SHAN 5 at the Associate Terminals facility, on behalf of Emerald's customer, to ultimately be shipped overseas.[5]

To accomplish this, in or around August 2021, Emerald entered into a Barge Transportation Agreement with Marquette (the "Barge Transportation Agreement").[6] (According to Marquette's communications to Emerald, the Barge Transportation Agreement is effective as of September 7, 2021, although it was signed by the parties by August 20, 2021.[7]) As stated in the

---

[2] **Exhibit 1**, Declaration of Jack J. Wells, p. 1, ¶ 4.

[3] *Id.* at p. 1, ¶ 5.

[4] *Id.* at p. 1, ¶ 6.

[5] *Id.* at p. 1, ¶ 7.

[6] *Id.* at pp. 1–2, ¶ 8. *See also* **R. Doc. 28-3**, Barge Transportation Agreement.

[7] *See* **R. Doc. 28-4**, Marquette's *Force Majeure* Letter, dated October 19, 2021 ("In accordance with Section 9 (the "Force Majeure Clause") of Part II of the Barge Transportation Agreement **dated September 7, 2021**, between Marquette Transportation Company, LLC and Emerald Coal International . . . .") (emphasis added).

contract, the term for the Barge Transportation Agreement was "September–October 2021."[8] The agreement contemplated two barge shipments—one during September 2021 and one during October 2021.[9] As per the contract, both the September 2021 and October 2021 shipments were to be provided by Marquette using "Open Hopper Barges – 15 barge unit tows."[10]

The parties' agreed that the barges would need to be loaded by mid-September 2021 and mid-October 2021.[11] Specifically, both Emerald and Marquette agreed that the second shipment would need to be fully loaded during the week of October 11, 2021.[12] (This understanding was echoed by Rick Martin—Marquette's Vice President – Open Hopper Barge Freight—via email on September 21, 2021, wherein he stated: "I also wanted to check in to see if you have tentative loading dates for the 50k tons in October at this time? I believe we were shooting for late in the week of 10/11 a few weeks ago and wanted to see if that was holding."[13])

In line with that understanding regarding the second shipment, on September 29, 2021, Marquette reached out to Emerald to confirm if Emerald had "received possible loading dates from Alliance at this time for October."[14] Emerald responded that its "laycan for this vessel is October 25-Nov 5 so we would need the barges at the terminal around October 23/24 so they can be sampled (assuming vessel arrives on the 25th)."[15] Mr. Rick Martin responded, thanking Jack Wells (Emerald) and asking him to "confirm with Alliance what dates will work for them to load on the

---

[8] **R. Doc. 28-3**, Barge Transportation Agreement, p. 1.

[9] *See id. See also* **Exhibit 1**, Declaration of Jack J. Wells, p. 2, ¶ 9.

[10] *See* **R. Doc. 28-3**, Barge Transportation Agreement, p. 1. *See also* **Exhibit 1**, Declaration of Jack J. Wells, p. 2, ¶ 10.

[11] **Exhibit 1**, Declaration of Jack J. Wells, p. 2, ¶ 11.

[12] *Id.* at p. 2, ¶ 12.

[13] **Exhibit 2**, (Correspondences dated September 9–21, 2021, between Marquette and Emerald), at MTC-048.

[14] **Exhibit 3**, (Correspondences dated September 29, 2021, between Marquette and Emerald), at MTC-072–MTC-073.

[15] *Id.* at MTC-072.

week of 10/10."[16]

On October 11, 2021, Rick Martin notified Emerald that it had **designated the 15 barges for "loading at Mt. Vernon this week for our October contract."**[17] **Among those 15 barges were the following: [1] AGS-776, [2] AGS-785, [3] MTC-0182, [4] MTC-238B, [5] MTC-248B, and [6] MTC-250B** (collectively, these barges shall be referred to as the "Withdrawn Barges")**.**[18] That same day, Marquette notified Emerald that it "got approval to load barges to 11'6" and provided another list of the barges designated to perform under the contract, **which included the Withdrawn Barges**.[19] Yet, on the very next day, October 12, 2021, Rick Martin notified Emerald that the Withdrawn Barges, previously designated for Emerald's job, had been pulled, because these barges were "being used for another customer as it sounds like Alliance is awaiting partial payment for the material that is scheduled for this load."[20] Marquette was neither a party nor a third-party beneficiary to the unrelated contract between Emerald and Alliance.[21] Moreover, that agreement was confidential between Emerald and Alliance, and thus, Marquette would not/should not have known what the payment terms were, and whether or not Emerald had paid pursuant thereto.[22] And, because Marquette was not a party to that contract, any purported lack of payment by Emerald to Alliance had no bearing on Marquette's performance of the unrelated Barge Transportation Agreement. Regardless, no such payment issue existed—and Emerald

---

[16] *Id.*

[17] **Exhibit 4** (Correspondences dated October 11–12, 2021, between Marquette and Emerald), at MTC-063–MTC-064. *See also* **Exhibit 1**, Declaration of Jack J. Wells, p. 2, ¶ 13.

[18] **Exhibit 4** (Correspondences dated October 11–12, 2021, between Marquette and Emerald), at MTC-063–MTC-064. *See also* **Exhibit 1**, Declaration of Jack J. Wells, p. 2, ¶ 14.

[19] **Exhibit 4** (Correspondences dated October 11–12, 2021, between Marquette and Emerald), at MTC-062–MTC-063.

[20] *Id.* at MTC-062. *See also* **Exhibit 1**, Declaration of Jack J. Wells, p. 2, ¶ 15.

[21] **Exhibit 1**, Declaration of Jack J. Wells, p. 2, ¶ 16.

[22] *Id.*

informed Marquette of this fact—as the requisite payment to Alliance had been made on October 8, 2021.[23]

One week later, on October 19, 2021, Marquette sent a *force majeure* letter to Emerald, claiming ongoing performance issues due to Hurricane Ida.[24] However, two basic facts reveal that this *force majeure* letters is groundless insofar as it concerns Emerald: (1) the letter was dated almost a month and a half after Hurricane Ida made landfall on August 29, 2021,[25] and (2) by Marquette's own admission, the Barge Transportation Agreement became effective **after** Hurricane Ida made landfall, and thus, Marquette should have been aware of these issues before the agreement went into effect.[26] By its very nature, a *force majeure* event must be unforeseeable, which Hurricane Ida certainly was not as of the effective of the Barge Transportation Agreement:

> A force majeure excusing event, by its very nature, must be unforeseeable to some extent at the time of contracting. Black's Law Dictionary defines a force majeure clause as "[a] contractual provision allocating the risk if performance becomes impossible or impracticable, esp. as a result of an event or effect that the parties could not have anticipated or controlled." Black's Law Dictionary 673-74 (8th ed. 2004). Even where, as here, a contract's force majeure clause does not expressly use the word "foreseeability," courts consider foreseeability when determining whether the event qualifies as force majeure.[27]

Accordingly, because Hurricane Ida had made landfall on the effective date of the contract—September 7, 2021—it should not be considered a *force majeure* event insofar as the Barge Transportation Agreement is concerned, as it was not unforeseeable. Moreover, Marquette bears the burden of proving the applicability of the *force majeure* provision to excuse its timely

---

[23] *Id.* at p. 2, ¶ 17; **Exhibit 1-A**, Evidence of Payment to Alliance on October 8, 2021.

[24] *See* **R. Doc. 28-4**, Marquette's *Force Majeure* Letter, dated October 19, 2021.

[25] *E.g.*, John L. Even II et al., *National Hurricane Center Tropical Cyclone Report – Hurricane Ida*, (April 4, 2022), https://www.nhc.noaa.gov/data/tcr/AL092021_Ida.pdf.

[26] **R. Doc. 28-4**, Marquette's *Force Majeure* Letter, dated October 19, 2021 ("In accordance with Section 9 (the "Force Majeure Clause") of Part II of the Barge Transportation Agreement **dated September 7, 2021**, between Marquette Transportation Company, LLC and Emerald Coal International . . . .") (emphasis added).

[27] *Roost Project, LLC v. v. Andersen Contr. Co.*, 437 F. Supp. 3d 808, 821 (D. Idaho 2020).

performance, which it has failed to do via competent summary judgment evidence.[28] The facts are that Marquette knew that the timely supply of 15 barges was necessary to fully perform under the parties' contract; yet, Marquette refused to timely perform. Instead, it took the barges designated for Emerald and provided them to another client of Marquette, and then subsequently attempted to declare *force majeure* to excuse its performance failure.

Ultimately, Marquette failed to replace the Withdrawn Barges until over two weeks later, thereby causing five of the barges not to be loaded until October 29, 2021.[29] (Those five barges did not arrive in Convent, Louisiana until November 7, 2021, which is after the term for ultimate performance agreed to by Marquette in the Barge Transportation Agreement.[30]) This caused a nine-day delay in the M/V SHAO SHAN 5 being able to begin loading.[31] This delay resulted in Emerald incurring $324,000 in demurrage on behalf of its customer.[32] Had the Withdrawn Barges been timely provided and loaded with the other, timely barges, no demurrage would have been incurred.[33]

On February 22, 2022, Marquette filed its Verified Complaint with this Court, seeking payment for certain invoices it claimed were due and owing, and for which is allegedly had not received payment.[34] On April 27, 2022, Emerald filed its Answer and Affirmative Defenses with

---

[28] *See WC 3rd & Trinity, LP v. STK Rebel Austin, LLC*, No. 1:17-CV-688-LY, 2019 U.S. Dist. LEXIS 17620, at *29 (W.D. Tex. Feb. 1, 2019) ("A party relying on a force majeure clause bears the burden of proving that the event was beyond its control and without its fault or negligence.") *See also Nissho-Iwai Co. v. Occidental Crude Sales, Inc.*, 729 F.2d 1530, 1540 (5th Cir. 1984) ("The common law defense of impossibility due to Act of God requires the defendant to prove that an excusing event is beyond his control, and contractual force majeure provisions typically incorporate this requirement.") (internal citations omitted).

[29] **Exhibit 1**, Declaration of Jack J. Wells, p. 2, ¶ 18.

[30] *Id.*; **R. Doc. 28-3**, Barge Transportation Agreement, p. 1.

[31] **Exhibit 1**, Declaration of Jack J. Wells, p. 2, ¶ 19.

[32] *Id.* at p. 3, ¶ 20.

[33] *Id.* at p. 3, ¶ 21.

[34] *See* R. Doc. 1.

the Court, and among its affirmative defenses, Emerald included the following:

> Emerald did not breach the parties' agreement. Instead, Plaintiff breached the agreement by failing to perform as required pursuant to the parties' agreement and failing to timely provide the requisite number of barges pursuant to the agreement's terms, which was an integral part of the parties' agreement. As a result of Plaintiff's failure and/or refusal to perform as required, Emerald incurred significant out-of-pocket costs and expenses, and thus, Emerald should be relieved of any obligation to Marquette or, in the alternative, Emerald should be entitled to a set off for any monies that might be determined to be due.[35]

Louisiana law—the applicable law, as discussed below—plainly holds that "setoff is an affirmative defense."[36] And thus, through its affirmative defense, Emerald seeks to reduce any recovery to which Marquette claims to be entitled—which Emerald denies—by the damages owed to Emerald arising from Marquette's breach of the parties' contract.

The above facts and evidence make clear that performance of the contract in mid-October 2021 was an integral, understood, and agreed-upon provision of the parties' contract. Marquette failed and/or refused to comply with this agreement, thereby breaching the contract and causing Emerald to incur demurrage charges for delays in loading the M/V SHAO SHAN 5 in Convent, Louisiana. It is this demurrage costs, incurred due solely to the breach of contract by Marquette that Emerald seeks to setoff in the pending action.

## II. **Emerald's claim for setoff is proper as it is entitled to consequential damages from Marquette due to Marquette's breach of contract, and the waiver of consequential damages does not apply to Emerald's setoff claim based on Marquette's breach of contract.**

In its motion, Marquette attempts to rely upon an inapplicable clause of the Barge Transportation Agreement to overcome Marquette's claim for setoff, whereby Emerald waived consequential damages for "any theory of fault." However, the clause is inapplicable to Emerald's

---

[35] R. Doc. 8, p. 5, Affirmative Defense No. 9.
[36] *LSREF2 Baron, L.L.C. v. Tauch*, 751 F.3d 394, 399 (5th Cir. 2014).

claim for setoff, because the waiver only applies to a "theory of fault"; it does not cover all "claims" or all "theories of liability." Accordingly, the contractual waiver does not apply to Emerald's claim for setoff, because the damages for which Emerald seeks to setoff—demurrage—arose from Marquette's breach of contract by failing to timely provide certain barges and removal of certain barges to service another customer, thereby resulting in demurrage suffered by Emerald

The full provision from the Barge Transportation Agreement—entitled "No Consequential or Punitive Damages—reads as follows:

> Carrier will not be liable under **any theory of fault** for any punitive, indirect or consequential damages or losses (including loss of production or losses from business interruption). Within limiting the generality of the foregoing, Carrier will not be liable for any losses or damages resulting from or related to deviations or delays in shipment, long-term storage of the cargo, absence of ventilation, heating or freezing, moisture or other conditions in the cargo itself or condensation and moisture that would be reasonable expected in river barges, deficiencies in packaging or covering or dunnage, or other causes not related to deficiencies in the barge or accidents caused by negligence of Carrier.[37]

Importantly, the parties explicitly agreed that the waiver solely applied to "any theory of fault." However, a breach of contract claim is not a "theory of fault," and thus, is not covered under the waiver provision.

The United States Supreme Court succinctly delineated this concept in its recent opinion in *CITGO Asphalt Ref. Co. v. Frescati Shipping Co.*:

> But as a general rule, due diligence and **fault-based concepts** of tort liability **have no place in the contract analysis** required here. Under elemental precepts of contract law, an obligor is "liable in damages for breach of contract even if he is without fault." To put that default contract-law principle in tort-law terms, "Contract liability is strict liability."[38]

If parties desire to include all potential claims, whether tort or contract, in their waiver of damages,

---

[37] **R. Doc. 28-3**, Barge Transportation Agreement, p. 6.

[38] *CITGO Asphalt Ref. Co. v. Frescati Shipping Co.*, 140 S. Ct. 1081, 1089 (2020) (citations omitted).

9

the parties will use broad language specifying it applies to "any theory of liability" or specify that it applies to contract claims.[39] Without an express limitation, "[m]aritime law allows for the recovery of consequential damages, including lost profits, if such damages are 'a foreseeable result of the breach.'"[40] Accordingly, because the parties did not agree on such language, the waiver does not apply to contract claims, and thus, does not prevent Emerald from obtaining setoff.

Marquette's citation to the *Lytal Enterprises, Inc. v. Newfield Exploration Co.* is misguided. In *Lytal*, the Court did not find that no right of setoff existed. Instead, the Court stated that the defendants had "cited no authority for the proposition that it may assert its own claims for damages as a defense to its obligation to pay for the vessels provided," and that the contract otherwise did not provide for one.[41] Thus, "[i]n he absence of statutory, contractual or case law authority establishing a set-off defense in this context, the Court holds that Newfield's claims are not a defense to its divisible obligation to pay the invoices at issue."[42]

Here, the choice of law provision in the contract states that it "will be governed by and construed in accordance with the general maritime laws of the United States. To the extent that state law is applicable or needed to supplement general maritime law, the statutes, rules and case law of the Eastern District of Louisiana will govern this agreement."[43] Here, the general maritime

---

[39] *See, e.g., DCR Mktg. Inc. v. United States All. Grp., Inc.*, SACV 19-01897 JVS(DFMx), 2020 U.S. Dist. LEXIS 156458, at *16 (C.D. Cal. July 9, 2020) ("In no event shall either party, or their affiliates or any of their respective directors, officers, employees, agents or subcontractors, be liable under any theory of tort, contract, strict liability or other legal theory . . . ."); *Gravier Prods. v. Amazon Content Servs., LLC*, 19-cv-1169(DLC), 2019 U.S. Dist. LEXIS 127553, at * 4 (S.D.N.Y. July 31, 2019) ("Each party hereby waives all claims against the other party for any indirect, incidental, punitive, and consequential damages and [Gravier] hereby waives all claims to damages of any kind related to this agreement, whether in contract or tort and under any theory of liability . . . .").

[40] *Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.*, 557 F. Supp. 3d 381, 400 (E.D.N.Y. 2021) (citing *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 874, 106 S. Ct. 2295, 90 L. Ed. 2d 865 (1986)).

[41] *Lytal Enterprises, Inc. v. Newfield Exploration Co.*, C.A. No. 06-0033, 2006 U.S. Dist. LEXIS 75863, at *18–19 (E.D. La. Oct. 18, 2006).

[42] *Lytal Enterprises, Inc. v. Newfield Exploration Co.*, C.A. No. 06-0033, 2006 U.S. Dist. LEXIS 75863, at *19 (E.D. La. Oct. 18, 2006).

[43] **R. Doc. 28-3**, Barge Transportation Agreement, p. 6.

law is silent on the right to setoff in the present context, thus, pursuant to the parties' agreement, state law would be applicable, and thus, Louisiana state law would be applicable. Under Louisiana Civil Code article 1893, setoff—referred to as "compensation" under Louisiana state law—is proper as follows:

> Compensation takes place by operation of law when two persons owe to each other sums of money or quantities of fungible things identical in kind, and these sums or quantities are liquidated and presently due.
>
> In such a case, compensation extinguishes both obligations to the extent of the lesser amount.[44]

This article has also been applied in cases in the Eastern District of Louisiana, thereby clearing falling within the purview of the choice of law provision in the Barge Transportation Agreement.[45]

Any debts owed between Marquette and Emerald would be of "fungible things identical in kind," because they would both be debts of money, which is a fungible good.[46] This Court will determine whether Emerald and/or Marquette's obligations are "liquidated and presently due," and thus, to what extent compensation applies to extinguish the obligations. Ultimately, regardless of whether the Court finds that Emerald owes all or a portion of the debt claimed by Marquette, this motion will not dispose of this action. Emerald still has its claim/defense of compensation/setoff, which this Court will need to rule upon prior to final disposition.

The total demurrage that Emerald became liable for due to Marquette's breach of contract was $324,000, which exceeds the amount of Marquette's claim, which totals $311,096.32 (discussed further below).[47] Accordingly, the Court should deny summary judgment as there is at

---

[44] La. Civ. Code art. 1893.

[45] *E.g.*, *Cheniere Constr., Inc. v. Hamp's Constr., LLC*, C.A. No. 16-16407, 2020 U.S. Dist. LEXIS 106696, at *4 (E.D. La. June 18, 2020).

[46] *Janvey v. Dillon Gage, Inc.*, 856 F.3d 377, 385 n.2 (5th Cir. 2017) ("After all, money is fungible.").

[47] **R. Doc. 28-5**, Invoice No. FR21-215240, p. 6.

least a genuine issue of material fact whether Emerald is entitled to setoff, and thus, whether the full amount of Marquette's claims is extinguished, and thus, not due and owing.

Similar, the remaining cases cited by Marquette also are unavailing.[48] In both cases—*Lifecare Hospitals of New Orleans, L.L.C. v. Lifemark Hospital of Louisiana, Inc.* and *Burleigh v. Lee*—the Court merely stated that a breach of one contractual provision does not render the remainder of the contract unenforceable. However, Emerald does not seek to render the agreement unenforceable due to Marquette's breach. In actuality, Emerald is seeking to have the Court enforce the contract according to its terms, such that Emerald is entitled to setoff for the damages caused by Marquette's breach.

Finally, the law of Louisiana has a "long-established principle" that "he who prevents a thing may not avail himself of the non-performance he has caused. This principle is derived from the premise one should not be able to take advantage of his own wrongful act."[49] Effectively, Marquette argues that it should not be subject to setoff for the damages caused to Emerald due to Marquette's own, intentional conduct in pulling the barges, thereby delaying the shipment and resulting in damages to Emerald.

For all of these reasons, the Court should deny Marquette's motion for summary judgment.

### III. Marquette seeks payment for invoices for demurrage that only arose due to Marquette's own breach of contract.

"On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the

---

[48] *See Lifecare Hospitals of New Orleans, L.L.C. v. Lifemark Hospitals of Louisiana, Inc.*, 07-914 (La. App. 5 Cir. 5/15/08); 984 So. 2d 894; *Burleigh v. Lee*, 17-335 (La. App. 1 Cir. 3/12/18); 2018 WL 1279830.

[49] *Gibbs Constr. Co. v. Thomas*, 500 So. 2d 764, 766 (La. 1987).

motion."[50] Here, Marquette has failed to establish it is entitled to summary judgment in relation to payment of certain invoices purportedly owed by Emerald.

In particular, Marquette seeks payment for three invoices related to "demurrage for the second shipment"—Invoice Nos. DD21-215395 (dated November 3, 2021); DD21-216039 (dated November 8, 2021); and DD21-216932 (November 10, 2021). These demurrage costs all arose due to delays in unloading the Marquette barges at the Associated Terminals facility in Convent, Louisiana as the result of the delay is getting barges to that facility.[51] In other words, Marquette seeks payment for delays in loading the M/V SHAO SHAN 5 that arose due to Marquette's failure to timely provide the requisite barges. Moreover, pursuant to its own *force majeure* letter—which Marquette does not concede was proper—"neither Shipper nor Carrier will be liable for any loss or damage or from failure to perform caused or contributed to a cause beyond the reasonable control of Carrier and/or Shipper."[52] Here, any delay in loading the M/V SHAO SHAN 5 were due to Marquette's failure to timely provide the barges, and thus, "beyond the reasonable control of" Emerald.[53] Accordingly, Emerald cannot be liable for those demurrage charges that Marquette presently seeks summary judgment on, and thus, summary judgment is improper as to those invoices.

### IV. Marquette seeks payment for Invoice No. DD21-213777, which only arose due to the same purported *force majeure* that Marquette seeks to hide behind.

Marquette also seeks payment for Invoice No. DD21-213777, which is an invoice for demurrage allegedly owed by Emerald due to delays in loading in or around late-September and

---

[50] *Flinn v. R.M.D. Corp.*, C.A. No. 3:11-CV-386-H, 2014 U.S. Dist. LEXIS 77832, at *20–21 (W.D. Ky. June 6, 2014) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[51] **Exhibit 1**, Declaration of Jack J. Wells, p. 3, ¶ 22.

[52] **R. Doc. 28-4**, Marquette's *Force Majeure* Letter, dated October 19, 2021

[53] **R. Doc. 28-4**, Marquette's *Force Majeure* Letter, dated October 19, 2021.

early-October 2021.[54] However, all of this demurrage arose due to delays at the Associated Terminals facility in Convent, Louisiana—where the barges would be unloaded—resulting from Hurricane Ida.[55] (Associated Terminals issued its own *force majeure* letter on August 27, 2021, over 45 days prior to Marquette issuing there letter.[56])

This is the same, purported *force majeure* event that Marquette seeks to utilize to excuse its failure to perform. While Emerald denies that Marquette should get to take advantage of the *force majeure* event to excuse its lack of performance, based on its own argument, Marquette is not entitled to recover for the demurrage on Invoice No. DD21-213777. All of these delays were caused by *force majeure* events at the relevant terminal, and through no fault on Emerald. According to the *force majeure* clause in the contract "[n]either Shipper nor Carrier will be liable for any loss or damage or from failure to perform caused or contributed to by the following: acts of God."[57] Therefore, Marquette is also not entitled to seek to recover for the demurrage reflected on Invoice No. DD21-213777, or at the very least, genuine issues of material fact remain that warrant a trial on the issue.

## CONCLUSION

Therefore, for all of the forgoing reasons, the Court should deny Marquette's motion for summary judgment. The reasons for denial include:

- the numerous genuine issues of material fact for the fact finder to rule upon at the trial in this matter;
- the invalidity and ineffectiveness of Marquette's *force majeure* claim;
- the failure of Marquette to timely provide the 15 barges for the mid-October

---

[54] *See* **R. Doc. 28-5**, Invoice No. DD21-213777, pp. 1–5.

[55] **Exhibit 1**, Declaration of Jack J. Wells, p. 3, ¶ 23.

[56] *Id.* at p. 3, ¶ 24; **Exhibit 1-B**, *Force Majeure* Letters from Associated Terminals, dated September 3, 2021.

[57] **R. Doc. 28-3**, Barge Transportation Agreement, p. 5.

2021 shipment pursuant to the parties' Barge Transportation Agreement;

- the entitlement by Emerald to compensation/setoff for the damages it is owed by Marquette due to Marquette's breach of the parties' agreement; and

- the inability of Marquette to recover payment for all of the invoices for which it seeks, including the invoices that arose solely due to either Marquette's failure to timely perform or delays due to the same *force majeure* event that Marquette attempts to rely upon.

Accordingly, looking at the evidence in the light most favorable to Emerald, the Court should deny the motion for summary judgment and let the case proceed to trial.

Respectfully submitted,

/s/ Justin J. Marocco
Victor A. Walton, Jr. (KBA No. 90803)
J. B. Lind (KBA No. 92594)
Vorys Sater Seymour and Pease LLC
301 East 4th Street, suite 3500
Cincinnati, OH 45202
Telephone: (513) 7234-4027
Fax: (513) 852-8447
Email: vanwalton@vorys.com
jblind@vorys.com

JEFFERSON R. TILLERY (*pro hac vice*)
Jones Walker LLP
201 St. Charles Avenue, Suite 4800
New Orleans, LA 70170
Telephone: (504) 582-8000
Fax: (504) 582-8164
Email: jtillery@joneswalker.com

JUSTIN J. MAROCCO (*pro hac vice*)
Jones Walker LLP
445 North Blvd., Suite 800
Baton Rouge, LA 70802
Telephone: (225) 248-2415
Fax: (225) 248-3115
Email: jmarocco@joneswalker.com

**Attorneys for Defendant, Emerald International Company**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record by filing the same in this Court's CM/ECF system this 31st day of July, 2023.

/s/ Justin J. Marocco