UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:22-CV-00024-BJB-LLK

MARQUETTE TRANSPORTATION COMPANY, LLC          PLAINTIFF

V.

EMERALD INTERNATIONAL CORPORATION              DEFENDANT

---

MARQUETTE TRANSPORTATION COMPANY, LLC'S
REPLY MEMORANDUM IN RESPONSE TO EMERALD INTERNATIONAL
CORPORATION'S MEMORANDUM IN OPPOSITION TO MARQUETTE'S MOTION
FOR SUMMARY JUDGMENT
(Electronically Filed)

---

Plaintiff, Marquette Transportation Company, LLC ("Marquette"), for its Reply Memorandum in in Response to Emerald International Corporation's ("Emerald") Memorandum in Opposition to Marquette's Motion for Summary Judgment, states as follows:

## SUMMARY OF ARGUMENT

Emerald's Opposition Memorandum wholly ignores the plain and unambiguous provisions of the Barge Transportation Agreement (the "Agreement"), the terms of which were negotiated and agreed to by the parties. That Agreement provides no specific loading or delivery dates for the shipments of coal at issue. On the contrary, it provides that Marquette "will not be bound to transport any cargo . . . in time for any particular market, and will not be liable for deviations or delays in shipment."[1] Emerald cites no law

---
[1] Exhibit "A-1" to DN 28, p. 3, Article 1.

or evidence that prevents this provision from being enforced as written. Emerald further fails to address the terms of the Agreement that require it to "pay freight and demurrage in full notwithstanding any loss or damage to cargo, or interruption or abandonment of the voyage."[2]

Emerald does not claim these terms are ambiguous, because they are not, nor does it challenge that Marquette invoiced Emerald as provided by the terms of the Agreement, which it did. Instead, Emerald uses its Opposition Memorandum to try to re-write the terms of the Agreement, relying on a self-serving Declaration from its President regarding an alleged "understanding" between the parties on the timing of the loading of the coal for shipment. Emerald's argument, in addition to not being supported by the evidence, is contrary to the plain terms of the Agreement which, in addition to the provisions noted above, require a writing signed by both parties to amend the Agreement. No such writing exists. Further, the Agreement very clearly states "no verbal agreements or understandings of any kind will be binding upon the parties."[3]

In short, Emerald's Opposition Memorandum fails to provide appropriate summary judgment evidence to contest the fact that the parties agreed by contract that Marquette is not liable for any delays in the coal shipments that were the subject of the Agreement and further agreed that payment in full of both freight and demurrage was due, regardless of any interruption in the transport of the coal, within thirty (30) days of being invoiced. As a result, Emerald has failed to establish that Marquette is not entitled to the damages it seeks as a matter of law.

---

[2] Exhibit "A-1" to DN 28, p. 4, Article 5.

[3] Exhibit "A-1" to DN 28 p. 7, Article 17(i).

Emerald's arguments in support of its asserted setoff defense are equally unavailing. Emerald goes to great lengths to establish that it has an affirmative defense of setoff under Louisiana law, even though general maritime law is the primary law that applies under the Agreement, while ignoring the fact that Marquette has no responsibility for any delays in the shipment of the coal under the terms of the Agreement, including no responsibility for the demurrage that is the basis for Emerald's claim. Accordingly, Emerald's claim fails as a matter of law.

The bottom line is that Marquette invoiced Emerald for the transportation services it provided and demurrage that it was owed pursuant to the terms of the Agreement. Emerald has failed to pay invoices totaling $381,896.32 and has failed to cite any provision of the Agreement that would allow it to avoid its contractual obligation to make such payment. Emerald has further failed to cite any provision of the Agreement that Marquette has breached. Consequently, Marquette is entitled to summary judgment on the amounts invoiced, plus attorney's fees it has incurred in seeking collection of the amounts owed in accord with the terms of the Agreement, as well as a dismissal of Emerald's setoff defense.

## ARGUMENT

I. <u>Emerald's Opposition Memorandum creates no genuine issue of fact that payment of Marquette's invoices is owed pursuant to the terms of the Agreement.</u>

In order to overcome the summary judgment motion filed by Marquette, Emerald as the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Id.* at 247–48,

106 S.Ct. at 2510. Here, although Emerald goes to great lengths to try to establish a factual dispute, it fails to create any genuine issue regarding the relevant terms of the Agreement that govern the parties' respective claims, and thus fails to overcome Marquette's summary judgment motion.

The crux of Emerald's argument can be summarized by the following statement from Emerald's brief regarding the second coal shipment that was the subject of the Agreement, and which is the primary subject of this dispute: "performance of the contract in mid-October 2021 was an integral, understood and agreed-upon provision of the parties' contract."[4] In support of this position, Emerald relies on a Declaration from Jack J. Wells, its President, who makes unsupported assertions regarding "agreements" and "understandings" of the parties as to the timing of loading the barges, none of which are contained in the Agreement.[5] Such self-serving statements are insufficient to defeat Marquette's summary judgment motion.[6] More relevant for the purposes of Marquette's motion is Mr. Wells' admission that "the Agreement did not include a schedule for when barges would be loaded."[7] With no such schedule, and no signed written agreement between the parties that changes the terms of the Agreement, which is required to amend the Agreement as discussed further below, the Declaration from Mr. Wells provides no support for Emerald's position.

---

[4] DN 32, p. 8.

[5] DN 32-1, p. 2, ¶¶ 11-12.

[6] Numerous courts have declared that self-serving affidavits without factual support in the record will not defeat a motion for summary judgment. *See, e.g., Devine v. Jefferson Cnty., Kentucky*, 186 F. Supp. 2d 742, 744 (W.D. Ky. 2001); *Jadco Enterprises, Inc. v. Fannon*, 991 F. Supp. 2d 947, 955 (E.D. Ky. 2014); *Syvongxay v. Henderson*, 147 F. Supp. 2d 854, 859 (N.D. Ohio 2001); *Wolfe v. Village of Brice*, 37 F. Supp. 2d 1021, 1026 (S.D. Ohio 1999) ("Self-serving affidavits, alone, are not enough to create an issue of fact sufficient to survive summary judgment.").

[7] *Id*., p. 2, ¶ 11.

Emerald also relies on post-Agreement email communications between the parties in which the parties are coordinating the shipments of coal to argue that such email communications constitute a binding agreement regarding a loading date in mid-October 2021.[8] Noticeably absent from Emerald's argument is any citation to a term of the Agreement that requires such mid-October performance to which Emerald asserts the parties agreed. In reality, not only does the Agreement contain no such performance deadline, as Mr. Wells acknowledges in his Declaration, but it makes clear both that the transport of the coal will not take place on any particular schedule, and that Marquette will not be liable for any delays in shipment. The relevant Agreement terms are as follows:

> **1. Transport.** Carrier will not be bound to transport any cargo by any particular barge or towboat or route or in time for any particular market, and will not be liable for deviations or delays in shipment.

> * * *

> **8. Movement of Cargo.** All decisions concerning the transportation of cargo under this contract will be at the sole discretion of Carrier and will not subject Carrier to liability of any kind.

Perhaps recognizing the terms of the Agreement which it bargained for do not favor its position, Emerald attempts to make much of barges allegedly being assigned to move its coal and then used for another customer when Marquette was informed the coal would not be loaded until partial payment was made by Emerald. Regardless of what is ultimately established in this regard, it does not change the Agreement terms to which Emerald agreed, namely that (1) all decisions regarding the transport of the coal were exclusively for Marquette to make, without subjecting it to liability, (2) Marquette is not bound to transport the coal by any particular barge or on any particular deadline, and (3)

---

[8] DN 32, Exhibits 2-4.

to the extent there are delays in shipment, Marquette shall have no responsibility for such delays.

Furthermore, to the extent that Emerald's argument is that the various post-Agreement communications constitute an amendment to the Agreement, the Agreement prohibits amendment in this fashion, specifically providing in Section 17 that the Agreement can be amended or modified in only one way, namely:

> i. No amendment, modification or waiver of the terms of this contract will be effective unless they are made in writing and signed by each of the parties hereto. It is agreed that all terms and conditions pertinent hereto are included in this writing, and no verbal agreements or understandings of any kind will be binding upon the parties.[9]

Emerald has cited no such writing signed by both parties that amends the terms of the Agreement, nor does one exist. Thus, the various emails, letters, and Declaration from Mr. Wells on which Emerald relies, do not constitute an amendment or modification of the terms of the Agreement, and have no bearing on the motion for summary judgment filed by Marquette.

Emerald also challenges Marquette's declaration of *force majeure* pursuant to the terms of the Agreement but in so doing again ignores the Agreement provisions which clearly state that Marquette will not be liable for any delay in shipment, regardless of cause. Even if Marquette had not declared *force majeure*, it would still be entitled to the amounts invoiced, and not responsible for any delays associated with the aftermath of Hurricane Ida. In addition, Emerald misconstrues the nature of Marquette's *force majeure* declaration, which is based not solely on Hurricane Ida, but on the unforeseen delays that

---

[9] Exhibit "A-1" to DN 28, p. 7.

6

lasted for months afterwards.[10] Regardless, the Court need not wade into the *force majeure* analysis to grant Marquette's motion, as regardless of the cause, Marquette simply is not liable for any delay in shipment of the coal pursuant to the plain and unambiguous terms of the Agreement.

    II.    <u>Emerald's setoff claim is prohibited by the plain and unambiguous terms of the Agreement.</u>

Turning to Emerald's claim for setoff, Emerald argues that "it is entitled to consequential damages from Marquette due to Marquette's breach of contract,"[11] arguing further that its damages "arose from Marquette's breach of contract by failing to timely provide certain barges and removal of certain barges to service another customer."[12] As already discussed herein, and as set out in Sections 1 and 8 of the Agreement, there was no contractual requirement to provide any particular barges, or to provide barges by any set time. In addition, decisions regarding movement of the coal were solely Marquette's to make, and it is not subject to any liability whatsoever for those decisions, including any potential damage that may result from delay in shipment. On the basis of these provisions alone, Emerald's setoff claim, which Emerald asserts is based on an alleged failure to timely provide barges, fails as a matter of law.

In further support of its claim for setoff, Emerald offers an interpretation of the first sentence in Section 14 of the Agreement, which addresses Marquette's lack of liability for

---

[10] Emerald argues that Hurricane Ida was not an unforeseeable event on the effective date of the Agreement, but by its own admission, the Agreement was signed before Hurricane Ida made landfall. (DN 32, p. 3). Regardless, the lengthy delays in barge loading lasted for an extended period after the hurricane made landfall, and those delays certainly were unforeseeable, qualifying the hurricane and its aftermath as a *force majeure* event.

[11] DN 32, p. 8.

[12] DN 32, p. 9.

7

consequential damages based on theories of fault. However, Emerald ignores the very next sentence of that same section, which contains no such fault-based limitation, providing in relevant part:

> Without limiting the generality of the foregoing, Carrier will not be liable for any losses or damages resulting from or related to deviations or delays in shipment . . .[13]

Even if it is assumed that Emerald's reading of the first sentence of Section 14 of the Agreement is correct for the purposes of Marquette's motion, which Marquette does not concede, the next sentence plainly provides that Marquette is not liable for <u>any</u> damages resulting from delay in shipment, without mention of fault. This provision is consistent with, and nearly identical to language in Section 1 of the Agreement, making clear in multiple provisions of the Agreement that Marquette is not liable for any damages resulting from delay. Because such alleged delay is the basis for Emerald's claim, Emerald's claim is barred by the express terms of the Agreement, even if Emerald's reading of Section 14 is followed.

In addition, Emerald's reliance on *Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.*, 557 F. Supp. 3d 381 (E.D.N.Y. 2021) to support its alleged right to consequential damages is misplaced, as that case simply stands for the general proposition that maritime law allows for consequential damages, which Marquette does not dispute. *Id*. at 400. More to the point here is *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871, 106 S.Ct. 2295, 2302, 90 L.Ed.2d 865 (1986), where the Supreme Court pointed out that in the commercial setting in the maritime industry, parties are free to bargain for the terms of their contract, including

---

[13] <u>Exhibit "A-1"</u> to DN 28, p. 6.

warranties and risk allocation. 476 U.S. at 872–75, 106 S.Ct. at 2302–04. *See also Berge Helene Ltd. v. GE Oil & Gas, Inc.*, 896 F. Supp. 2d 582, 599 (S.D. Tex. 2012), citing *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 25, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004) ("In contrast, maritime law is designed to protect freedom of contract and allocation of risk among commercial parties."). In line with these cases, the Agreement reflects the bargained for agreement of Marquette and Emerald, pursuant to which Marquette has no liability for damages resulting from delay in shipment.

Finally, given the fact that the Agreement prohibits the delay damages that Emerald seeks, it is not necessary to examine its setoff argument in detail. Marquette would simply note that the Agreement is governed by the general maritime law of the United States, and state law only applies as needed to supplement. Because maritime law allows the parties to allocate risk by contract, as they have done, there is no need for the Court to analyze the Louisiana law on which Emerald relies.

### III. <u>Emerald's argument regarding Marquette's invoices for demurrage is contrary to the terms of the Agreement.</u>

Emerald has not disputed that the demurrage invoices were submitted by Marquette in accord with the procedure set out in the Agreement. Nor has it disputed that the amounts invoiced were as provided in the Agreement. It also has not disputed the invoices have been outstanding for more than 30 days. Instead, Emerald's argument regarding invoices for demurrage issued by Marquette is essentially a repeat of Emerald's other arguments. First, it argues that Marquette's invoices for demurrage[14] arose due to alleged delays in providing barges, which it argues constitutes a breach of the Agreement by Marquette. As already discussed herein, the Agreement provides no actionable claim

---

[14] The pertinent invoices are: (1) Invoice No. DD21-215395, (2) Invoice No. DD21-216039, and (3) Invoice No. DD21-216932.

9

to Emerald for such alleged delays. Further, Section 5 of the Agreement provides that "Shipper will pay freight and demurrage in full notwithstanding any loss or damage to cargo, or any interruption or abandonment of the voyage." Because Emerald's arguments that Marquette breached the Agreement are unavailing, its arguments that the invoices for demurrage are not owed are equally without merit.

Emerald lastly argues that one invoice for demurrage (DD21-213777) arose because of delays resulting from a *force majeure* event. This is obviously contrary to the position Emerald takes elsewhere in its Opposition Memorandum that no such event took place, and further belied by the fact that at no time has Emerald ever declared a *force majeure* event under the Agreement, nor does it even allege that it has. Regardless, Emerald's argument ignores the plain language of the Agreement pursuant to which Marquette has no liability for delivery delays, as well as language in the *force majeure* provision, which provides that "[a] declaration of Force Majeure does not excuse payment of demurrage for a barge on demurrage status."

In short, Emerald's arguments regarding Marquette's invoices for demurrage are based on the false premise that Marquette can be held responsible for delays under the Agreement. Emerald's position is contrary to the very terms of the Agreement to which Emerald agreed to abide and is insufficient to defeat Marquette's entitlement to payment of the invoices for demurrage.

## CONCLUSION

The law is clear that "[w]here the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435, 135 S.Ct. 926, 190 L.Ed.2d 809 (2015) (quoting 11 R. Lord, *Williston on Contracts* § 30:6, p. 108 (4th ed.

2012) (Williston)). As demonstrated herein and in Marquette's original memorandum, it successfully transported two loads of coal for Emerald. It billed Emerald for the services provided in accord with the clear and unambiguous terms of the Agreement, and Emerald has simply failed to pay amounts owed, contrary to its obligations under the Agreement. As a result, Marquette is entitled to summary judgment on the full amount of the outstanding invoices, $381,896.32, in addition to its attorney's fees for its efforts to collect the amounts it is due under the clear and unambiguous terms of the Agreement. Likewise, there is no support in the Agreement for Emerald's setoff claim, which should be dismissed as a matter of law.

RESPECTFULLY SUBMITTED, this the 14th day of August, 2023.

MILLER HAHN, PLLC

By: */s/ Bobby R. Miller, Jr.*
Bobby R. Miller, Jr., Esq.
2660 West Park Drive, Suite 2
Paducah, KY 42001
Telephone: (270) 554-0051
Facsimile: (866) 578-2230
Email: bmiller@millerlaw-firm.com

and

Allan C. Crane, Esq.
Miller Hahn, PLLC
365 Canal Street, Suite 860
New Orleans, LA 70130
Telephone: (504) 684-5044
Facsimile: (866) 578-2230
Email: acrane@millerlaw-firm.com

Attorneys for Marquette Transportation Company, LLC

CERTIFICATE OF SERVICE

I hereby certify that I have this the 14th day of August, 2023, electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Jefferson R. Tillery, Esq.
Jones Walker LLP
201 St. Charles Avenue, Suite 4800
New Orleans, LA 70170
Telephone: (504) 582-8000
Facsimile: (504) 582-8164
Email: jtillery@joneswalker.com

Victor A. Walton, Jr., Esq.
J.B. Lind, Esq.
Vorys Sater Seymour and Pease LLP
301 East 4th Street, Suite 3500
Cincinnati, OH 45202
Telephone: (513) 723-4027
Facsimile: (513) 852-8447
Email: vawalton@vorys.com
Email: jblind@vorys.com

Justin J. Marocco, Esq.
Jones Walker LLP
445 North Blvd., Suite 800
Baton Rouge, LA 70802
Telephone: (225) 248-2415
Facsimile: (225) 248-3115
Email: jmarocco@joneswalker.com

*Attorneys for Defendant, Emerald International Company*

                                          */s/ Bobby R. Miller, Jr.*
                                          Attorney for Marquette Transportation Company, LLC