UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:22-CV-24-BJB-LLK

MARQUETTE TRANSPORTATION COMPANY, LLC                    PLAINTIFF

V.

EMERALD INTERNATIONAL CORPORATION                    DEFENDANT

---

## MARQUETTE TRANSPORTATION COMPANY, LLC'S TRIAL BRIEF
(Electronically Filed)

---

COMES NOW Plaintiff, Marquette Transportation Company, LLC ("Marquette"), by counsel, and submits its Trial Brief in advance of the February 24, 2025 bench trial in this matter.

## STATEMENT OF THE CASE

This is a straightforward case of Emerald International Corporation ("Emerald") failing to pay amounts owed to Marquette under the terms of a negotiated marine transportation contract.[1] Marquette and Emerald entered into a Barge Transportation Agreement (the "Agreement") in August 2021, pursuant to which Marquette was to transport 100,000 short tons of coal by barge for Emerald from Mt. Vernon, Indiana and/or Uniontown, Kentucky to Convent, Louisiana in two shipments. The Agreement provides no specific loading or delivery dates for the shipments, only noting a "Term" of "September-October 2021" and identifying the volumes of coal to be transported in

---

[1] The factual and legal issues in this case are discussed in detail in the Motion for Summary Judgment and related pleadings filed by Marquette (DN 28 and 33) and are addressed in summary fashion herein for ease of reference for the Court.

1

September and October. Emerald has acknowledged that the Agreement did not include a loading schedule for the barges transporting the coal.[2]

Consistent with there being no specific delivery or loading deadlines, the Agreement gives Marquette discretion in how to transport the coal and allocates the risk of any delay in the shipment to Emerald. Specifically, the Agreement provides that Marquette "will not be bound to transport any cargo . . . in time for any particular market and will not be liable for deviations or delays in shipment."[3] In addition, the Agreement provides that "[a]ll decisions concerning the transportation of cargo under this contract will be at the sole discretion of Carrier and will not subject Carrier to liability of any kind."[4] The Agreement further provides "Carrier will not be liable for any losses or damages resulting from or related to deviations or delay in shipment . . . ."[5] Each of these provisions, to which Emerald agreed, clearly and unambiguously allocates any risk in the delay in the delivery of coal to Emerald.

Just days after the Agreement was entered, Hurricane Ida struck the Louisiana coast, resulting in significant delays in loading and unloading ocean vessels in the New Orleans area, where the coal was to be unloaded from barges and loaded on an ocean ship for transport overseas. The delays produced a bottleneck of barges in the area waiting to be loaded or unloaded, which limited the supply of Marquette's available barges, including barges it intended to use for the second shipment of coal for Emerald. These ongoing issues were evidenced by the delay in the loading of the first shipment of

---

[2] DN 32-1, p. 2, ¶ 11.

[3] Agreement, Part II – Standard Terms and Conditions, Section 1.

[4] Agreement, Part II, Section 8.

[5] Agreement, Part II, Section 14.

coal in Convent, Louisiana, the loading of which was delayed by at least 10 days. The second shipment was also delayed by the continued difficulty in securing barges. As a result of the ongoing delays and pursuant to the term of the Agreement, Marquette declared a force majeure event on October 19, 2021. Ultimately, the second shipment was completed, and the last barges were loaded on a ship on November 7, 2021.

Marquette invoiced Emerald for the transportation services it provided and demurrage that it was owed pursuant to the terms of the Agreement. As set out in the Agreement, Emerald was required to "pay freight and demurrage in full notwithstanding any loss or damage to cargo, or interruption or abandonment of the voyage."[6] All such payments were due in full within 30 days of the invoice date;[7] however, Emerald failed to pay several of the invoices, totaling $381,896.32. These invoices encompass demurrage owed for the first shipment, barge transportation for the second shipment, and demurrage owed for the second shipment. There is no question that each of these invoices is owed and past due under the terms of the Agreement. In addition, pursuant to the Agreement, Emerald is required to pay Marquette's "costs including attorney's fees incurred in seeking collection of any unpaid freight, demurrage and/or related charges."[8]

As noted above, the terms of the Agreement, to which Emerald agreed, make clear that Marquette is not liable for any delays in shipment, and Marquette is entitled to recover from Emerald the amount of the outstanding invoices in addition to Marquette's legal fees and costs in pursuing payment of the outstanding invoices.

---

[6] Agreement, Part II, Section 5.

[7] Agreement, Part II, Section 6.

[8] *Id*.

Emerald alleges that it paid demurrage to its customer in the amount of $357,423.04 because of the delayed arrival of some of the barges in the second shipment and asserts a right to a setoff from Marquette's recovery for the amounts it paid. The Agreement plainly prohibits the relief that Emerald seeks, providing both that Marquette will not be liable for any damages or losses resulting from any delay in shipment and also that it will not be liable for any consequential damages, "including damages resulting from or related to deviations or delays in shipment."[9] As a result, Emerald is not entitled to the setoff it seeks based on the clear and unambiguous terms of the Agreement.

## STIPULATIONS

The parties are working together on the language for stipulations of both fact and law for submission in advance of trial and will submit the stipulations to the Court as soon as the language is agreed upon.

## UNRESOLVED FACTUAL AND LEGAL ISSUES

The facts regarding the coal shipments at issue are generally not in dispute, with the main dispute between the parties being Marquette's right to payment of the invoices it issued to Emerald, and Emerald's asserted right to setoff, each of which is addressed in turn below.

### Marquette's Claims

Marquette's position is that Emerald breached the plain and unambiguous payment terms of the Agreement. Although Emerald acknowledges it has not paid for the second shipment of coal, or the outstanding demurrage invoice for the first shipment, it asserts its failure to pay Marquette under the Agreement is based on the fact that

---

[9] Agreement, Part II, Section 14.

Marquette barges that were originally to be used for the second shipment of coal were instead used by Marquette for another customer when Marquette was informed by the company providing the coal to Emerald that the barges would not be loaded until Emerald made a partial payment that was owed. Given the shortage of barges at the time, Marquette put the barges to use for another customer while waiting for the payment issue to be resolved. Emerald now asserts that it had made the partial payment timely, but it did not inform Marquette of this until days later, after the barges had been committed to another customer.

Regardless of when Emerald actually paid for the coal, its position is inconsistent with the bargained for terms of the Agreement, namely that (1) all decisions regarding the transport of the coal were exclusively for Marquette to make, without subjecting it to liability, (2) Marquette is not bound to transport the coal by any particular barge or on any particular deadline, and (3) to the extent there are delays in shipment, Marquette shall have no responsibility for such delays. Emerald was well aware when it entered the Agreement that it bore the risk of any delay in shipment, but now seeks to change the bargain it made because it does not like the result. Neither the Agreement nor the law supports Emerald's efforts to change the bargained for agreement of the parties.

In an effort to rewrite the terms of the Agreement it negotiated, Emerald relies on post-Agreement email communications between the parties in which the parties are coordinating the shipments of coal and discussing potential delivery dates to argue that such email communications constitute a binding agreement between the parties for a specific loading date in mid-October 2021. However, the Agreement explicitly prohibits amendment in this fashion, providing in Section 17 that the Agreement can be amended or modified only in a writing signed by both parties. No such writing exists.

Ultimately, there is no ambiguity in the Agreement. It contains the terms to which the parties bargained and agreed. Pursuant to these agreed terms, Marquette was not responsible for delays in shipment. Emerald's efforts to rewrite the Agreement after the fact because it was unhappy with the terms it negotiated have no legal effect. It is responsible for the transportation costs to Marquette under the terms of the Agreement, and Marquette's legal fees and costs to recover the amounts owed.

Emerald's Setoff Claim

Emerald alleges it paid demurrage to its customer in the amount of $357,423.04 because of the delay in Marquette's barges arriving with the second shipment of coal and asserts a right to a set off for the amount of demurrage it paid. Specifically, Emerald alleges that "it is entitled to consequential damages from Marquette due to Marquette's breach of contract," arguing further that its damages "arose from Marquette's breach of contract by failing to timely provide certain barges and removal of certain barges to service another customer."[10]

As set out in Sections 1 and 8 of the Agreement, there was no contractual requirement to provide any particular barges, or to provide barges by any set time. In cases when a contract does not specify a specific time to act, the law implies that an act be done within a reasonable time. *See, e.g.*, *Overseas Philadelphia, LLC v. World Council of Credit Unions, Inc.*, 892 F.Supp.2d 182, 189 (D.D.C. 2012), citing *Armenian Assembly of Am., Inc. v. Cafesjian*, 772 F.Supp.2d 20, 124 (D.D.C. 2011) Here, there was a delay of a few days in providing some of the barges after Marquette was informed barges would not be loaded because of a payment issue. Considering this in light of the Agreement's

---

[10] DN 32, at pp. 8-9.

provision that decisions regarding movement of the coal were solely Marquette's to make, and that it is not subject to any liability whatsoever for those decisions, including any potential damage that may result from delay in shipment, the delivery of coal was made within a reasonable time. On the basis of these provisions and the cited law, Emerald's setoff claim, which Emerald asserts is based on an alleged failure to timely provide barges, should fail.

Even if the setoff claim is considered, it is prohibited by the express terms of the Agreement. Emerald offers an interpretation of the first sentence in Section 14 of the Agreement, which addresses Marquette's lack of liability for consequential damages, to argue that the language regarding Marquette having no liability for consequential damages applies only to claims based on fault, and not to Emerald's contract claim. In support of its position, Emerald relies on *CITGO Asphalt Ref. Co. v. Frescati Shipping Co.*, 140 S. Ct. 1081 (2020); however, that case neither addresses the interpretation of a similar consequential damages contractual provision nor consequential damages at all for that matter. Instead, it addressed whether a safe-berth clause in a charter agreement merely imposed a duty of due diligence in the selection of the berth. *Id*. at 1089. The holding in *CITGO* is irrelevant to the interpretation of the Agreement at issue here.

In addition, Emerald's argument ignores the very next sentence of Section 14, which contains no such fault-based limitation, providing in relevant part:

> Without limiting the generality of the foregoing, Carrier will not be liable for any losses or damages resulting from or related to deviations or delays in shipment . . .

Even if it is assumed that Emerald's reading of the first sentence of Section 14 of the Agreement is correct, the next sentence plainly provides that Marquette is not liable for any damages resulting from delay in shipment, without mention of fault. This provision is

7

consistent with, and nearly identical to language in Section 1 of the Agreement, making clear in multiple provisions of the Agreement that Marquette is not liable for any damages resulting from delay. Because such alleged delay is the basis for Emerald's claim, Emerald's claim is barred by the express terms of the Agreement, even if Emerald's reading of Section 14 is followed.

RESPECTFULLY SUBMITTED, this the 20th day of December, 2024.

MILLER HAHN, PLLC

By: */s/ Bobby R. Miller, Jr.*_____
     Bobby R. Miller, Jr., Esq.
     2660 West Park Drive, Suite 2
     Paducah, KY 42001
     Telephone: (270) 554-0051
     Facsimile: (866) 578-2230
     bmiller@millerlaw-firm.com

     and

     Allan C. Crane, Esq.
     Miller Hahn, PLLC
     365 Canal Street, Suite 860
     New Orleans, LA 70130
     Telephone: (504) 684-5044
     Facsimile: (866) 578-2230
     acrane@millerlaw-firm.com

Attorneys for Marquette Transportation
Company, LLC

CERTIFICATE OF SERVICE

I hereby certify that I have this the 20th day of December, 2024, electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Jefferson R. Tillery, Esq.
Jones Walker LLP
201 St. Charles Avenue, Suite 4800
New Orleans, LA 70170
Telephone: (504) 582-8000
Facsimile: (504) 582-8164
jtillery@joneswalker.com

Victor A. Walton, Jr., Esq.
J.B. Lind, Esq.
Vorys Sater Seymour and Pease LLP
301 East 4th Street, Suite 3500
Cincinnati, OH 45202
Telephone: (513) 723-4027
Facsimile: (513) 852-8447
vawalton@vorys.com
jblind@vorys.com

Justin J. Marocco, Esq.
Jones Walker LLP
445 North Blvd., Suite 800
Baton Rouge, LA 70802
Telephone: (225) 248-2415
Facsimile: (225) 248-3115
jmarocco@joneswalker.com

*Attorneys for Defendant, Emerald International Company*

/s/ Bobby R. Miller, Jr.
Attorney for Marquette Transportation
Company, LLC